**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
|                                **Plaintiff,**   ) | |
| v.                                                         ) | Case No. 08-CV-0296-CVE-FHM |
| (1) ROBERT M. BUTLER, Individually  ) and as Trustee of the Helen M. Butler   ) Revocable Living Trust; (2) VICKI L.       ) BUTLER; (3) COMMUNITY BANK        ) AND TRUST COMPANY; and              ) (4) OKLAHOMA TAX COMMISSION, ) | |
|                                **Defendants.**  ) | |

**OPINION AND ORDER**

Now before the Court is the United States' Motion for Summary Judgment (Dkt. # 39). Plaintiff seeks summary judgment in its favor declaring the order of distribution of assets from the foreclosure sale of certain real property located in Tulsa County, Oklahoma. The Oklahoma Tax Commission (OTC) filed a response to plaintiff's motion for summary judgment (Dkt. # 48), in which it did not contest the order of priority in plaintiff's motion for summary judgment. ONB Bank and Trust Company (ONB)[1] stipulated to the order of priority in plaintiff's motion for summary judgment. Dkt. # 46.

**I.**

The United States filed a complaint (Dkt. # 1) seeking to reduce to judgment assessments of federal income and employment taxes owed by Robert M. and Vicki L. Butler (the Butlers), to foreclose federal tax liens on the Butlers' interest in real property located at 1714 S. Boston Avenue,

---

[1] ONB is the successor in interest to Community Bank and Trust Company. Dkt. # 19, at 1.

Tulsa, Oklahoma, 74119 (the property), and to have the proceeds of the foreclosure sale distributed in amounts and an order determined by the Court. Dkt. # 1. OTC claimed an interest in the property by virtue of tax liens, Dkt. # 14, and filed a counterclaim against the United States (Dkt. # 15) and a cross-claim against ONB (Dkt. # 25) asserting the priority of its liens. ONB also claimed an interest in the property by virtue of promissory notes and mortgages, Dkt. # 19, and filed an amended counterclaim against the United States (Dkt. # 29) and amended cross-claim against OTC (Dkt. # 25) asserting the priority of its interests.

The Court entered default judgment in favor of the United States against the Butlers. Dkt. # 37. On September 4, 2009, the Court entered a judgment of foreclosure (Dkt. # 42) and order of sale (Dkt. # 43) regarding the property. The Court ordered that proceeds of the foreclosure sale be applied first to costs of the action, and second to payment of the mortgage held by ONB. The surplus was to be deposited with the Clerk of the Court. Dkt. # 42. The United States seeks summary judgment determining the order of priority of distribution of the surplus from the foreclosure sale. Dkt. # 39.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Even though defendants do not oppose plaintiff's motion for summary judgment, the Court must examine the record to determine if summary judgment is appropriate. Cf. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) ("a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party"). Under LCvR 56.1(c) "[a]ll material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." Defendants have not specifically controverted

any of the material facts provided in plaintiff's brief in support of its motion for summary judgment (Dkt. # 40), and the Court finds that the United States' statement of material facts is supported by evidence in the summary judgment record.[2] Therefore, there are no genuine issues of material fact regarding the assessment dates and unpaid balances of the federal tax liens and the creation/change dates and unpaid balances of the OTC liens listed in plaintiff's brief in support of its motion for summary judgment (Dkt. # 40).

"Federal law governs the relative priority of federal tax liens and state-created liens." Aquilino v. United States, 363 U.S. 509, 514 n.5 (1960). Absent federal law to the contrary, the priority of state and federal liens depends "on the time it attached to the property in question and became choate." United States v. City of New Britain, 347 U.S. 81, 86 (1954). A lien is choate when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." Id. at 84; see also United States v. Vermont, 377 U.S. 351, 358 (1964) (applying the New Britain test to a state's lien).

Federal tax liens arise at the time the assessment is made. 26 U.S.C. §§ 6321, 6322. Thus, a federal tax lien is generally choate at the date the assessment is made.[3] See United States v. Leventhal, 316 F.2d 341, 343 (D.C. Cir. 1963) (a lien arising under §§ 6321 and 6322 "was valid

---

[2] The Court notes that the United States cites "Exhibit B, Affidavit of Kim Norman" as evidence supporting the assessment dates and unpaid balances of Internal Revenue Service liens. Dkt. # 40, at 3-5. Exhibit B to the Declaration of Olivia Hussey (Dkt. # 41) that accompanied the United States' motion for summary judgment is described as "federal tax lien priority and payoff amounts as of 4/1/2009 printout." Dkt. # 41, at 1. The United States has not filed an affidavit of Kim Norman in this matter. However, Olivia Hussey certified that the federal tax lien payoff amount printout is a true and correct copy, Dkt. # 41, at 1, and no party disputes its authenticity.

[3] 28 U.S.C. § 6323 requires that notice of the lien be filed in order to be valid against mortgagees, pledgees, purchasers, and judgment creditors.

as of [the date of assessment] against all persons except mortgagees, pledgees, purchasers, and judgment creditors"). Under Oklahoma law, tax liens arise at the time a tax warrant is issued and filed under OKLA. STAT. tit. 68, § 231, or at the date taxes are due and payable, see OKLA. STAT. tit. 68, § 234. Thus, for the purposes of this case, Oklahoma state taxes are choate as of the date a tax warrant is issued, the "creation date" for taxes assessed as stated on a tax return, or on the "change date" for additional taxes determined upon audit.

The undisputed facts show that the order of priority of the tax liens in this case is:

| **PRIORITY DATE** | **LIENOR** | **UNPAID BALANCE** |
|---|---|---|
| December 5, 1996 | OTC | $22,849.37[4] |
| September 8, 1997 | OTC | $15,866.59 |
| November 4, 1998 | OTC | $10,109.11 |
| November 6, 1998 | OTC | $3,568.26 |
| November 6, 1998 | OTC | $1,073.20 |
| November 16, 1998 | **Internal Revenue Service (IRS)** | $48,138.70 |
| August 7, 2000 | OTC | $4,562.16 |
| August 21, 2000 | **IRS** | $28,483.64 |
| November 13, 2000 | **IRS** | $190.17 |
| November 13, 2000 | **IRS** | $1,019.62 |
| November 13, 2000 | **IRS** | $1,055.05 |
| November 20, 2000 | **IRS** | $1,605.23 |
| March 19, 2001 | **IRS** | $35,017.50 |
| October 19, 2001 | OTC | $10,543.02 |

---

[4]     The unpaid balances are calculated as of April 1, 2009.

| **PRIORITY DATE** | **LIENOR** | **UNPAID BALANCE** |
|---|---|---|
| October 29, 2001 | **IRS** | **$50,510.69** |
| October 29, 2001 | **IRS** | **$1,672.40** |
| October 29, 2001 | **IRS** | **$1,557.68** |
| October 29, 2001 | **IRS** | **$1,073.99** |
| October 29, 2001 | **IRS** | **$176.27** |
| May 13, 2002 | **IRS** | **$1,011.61** |
| May 13, 2002 | **IRS** | **$933.05** |
| May 20, 2002 | **IRS** | **$3,119.81** |
| May 20, 2002 | **IRS** | **$2,726.33** |
| May 20, 2002 | **IRS** | **$2,630.37** |
| May 20, 2002 | **IRS** | **$2,536.06** |
| May 20, 2002 | **IRS** | **$2,422.23** |
| May 20, 2002 | **IRS** | **$421.47** |
| May 27, 2002 | **IRS** | **$1,298.08** |
| May 27, 2002 | **IRS** | **$1,198.94** |
| June 3, 2002 | **IRS** | **$2,519.81** |
| June 10, 2002 | **IRS** | **$179.55** |
| July 29, 2002 | **IRS** | **$2,905.33** |
| November 4, 2002 | **IRS** | **$3,608.86** |
| November 23, 2002 | **OTC** | **$4,203.49** |
| November 25, 2002 | **IRS** | **$34,898.45** |
| May 5, 2003 | **IRS** | **$6,257.45** |
| May 8, 2003 | **OTC** | **$4,324.79** |
| November 10, 2003 | **OTC** | **$4,653.59** |
| November 17, 2003 | **IRS** | **$36,719.00** |

| PRIORITY DATE | LIENOR | UNPAID BALANCE |
|---|---|---|
| November 29, 2004 | **IRS** | **$3,213.34** |
| March 27, 2006 | **OTC** | **$19,707.32** |
| October 10, 2005 | **IRS** | **$765.15** |
| May 25, 2007 | **OTC** | **$40,674.70** |
| March 5, 2007 | **IRS** | **$0.01** |
| August 8, 2008 | **IRS** | **$58,075.78** |

ONB has stipulated to the order of priority described in the United States' motion for summary judgment. Dkt. # 46. The United States argued that the federal tax liens had priority over any claim by ONB for attorney fees in connection with the mortgage default, because the default occurred after the notices of federal tax liens were filed. Dkt. # 40, at 12. OTC's tax liens are all prior to the IRS's most recent lien. See infra. Therefore, OTC's liens have priority over any claim for attorney fees by ONB as well.

**IT IS THEREFORE ORDERED** that the United States' Motion for Summary Judgment (Dkt. # 39) is **granted**. A separate order of priority of distribution of assets is entered herewith.

**DATED** this 12th day of November, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

7